## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| **KIMBERLY H.,** <br><br> **Plaintiff,** <br><br> **vs.** <br><br> **LELAND DUDEK,** <br> **Acting Commissioner of Social Security,** <br><br> **Defendant.** | **Case No. 2:24-cv-00863** <br><br><br> **REPORT & RECOMMENDATION** <br><br> **District Court Judge Dale A. Kimball** <br><br> **Magistrate Judge Dustin B. Pead** |

## INTRODUCTION

Plaintiff Kimberly H.[1] ("Plaintiff") seeks judicial review of the decision of the Acting Commissioner of Social Security ("Commissioner"), denying her claim for disability and disability insurance benefits under Title II of the Social Security Act ("Act").[2] After careful review of the entire record along with the parties' briefs,[3] the Court finds the Commissioner's decision is legally sound and supported by substantial evidence.[4] Accordingly, for the reasons set forth herein, the court RECOMMENDS the Commissioner's decision be affirmed and Plaintiff's Motion for Review of Agency Action be denied.[5]

---

[1] Pursuant to best practices in the District of Utah addressing privacy concerns in judicial opinions in certain cases, including social security cases, Plaintiff is referred to by first name and last initial only. Privacy concerns are inherent in many of the Federal Rules. *See*, Fed. R. App. P. 25(a)(5); Fed. R. Civ. P. 5.2; Fed. R. Crim. 49.1.

[2] 42 U.S.C. § 405(g).

[3] ECF No. 12, Plaintiff's Motion for Review of Agency Action; ECF No. 19, Commissioner's Response to Motion for Review of Agency Action; ECF No. 20, Plaintiff's Reply to Commissioner's Response.

[4] ECF No. 10-2, May 21, 2024 Social Security Administration Decision.

[5] ECF No. 12.

## STANDARD OF REVIEW

Section 405(g) of Title 42 of the United States Code provides for judicial review of the Commissioner's final decision. The court's review is limited to a determination of whether substantial evidence in the record, taken as a whole, supports the factual findings and whether the correct legal standards were applied.[6] "[F]ailure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal."[7]

An Administrative Law Judge's ("ALJ") factual findings are "conclusive if supported by substantial evidence."[8] Although the threshold for substantial evidence is "not high"; it is "more than a mere scintilla."[9] Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[10] "The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence."[11]

In considering the administrative record, the court may neither "reweigh the evidence [n]or substitute [its] judgment for [that of] the [ALJ's]."[12] As a result, where the evidence as a

---

[6] *See* 42 U.S.C. § 405(g); *Hendron v. Colvin*, 767 F.3d 951, 954 (10th Cir. 2014).

[7] *Jensen v. Barnhart,* 436 F.3d 1163, 1165 (10ᵗʰ Cir. 2005); *see also Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161 (10ᵗʰ Cir. 2012).

[8] *Biestek v. Berryhill,* 587 U.S. 97, 102, 139 S. Ct. 1148, 203 L. Ed. 2d 504 (2019) (internal quotation marks omitted).

[9] *Josue R. v. Kijakazi,* 2023 U.S. Dist. LEXIS 30662, at *6 (C.D. Cali Feb. 23, 2023) (citing *Biestek,* 587 U.S. at 102).

[10] *Biestek*, 587 U.S. at 103 (citation omitted).

[11] *Lax v. Astrue,* 489 F. 3d 1080, 1084 (10ᵗʰ Cir. 2005).

[12] *Hendron*, 767 F.3d at 954 (citation omitted).

whole can support either the agency's decision or an award of benefits, the agency's decision must be affirmed.[13]

## APPLICABLE LAW

The Act defines "disability" as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment" expected to result in death or last for at least twelve consecutive months.[14] An individual is considered disabled only if her impairments are so severe, she cannot perform her past work or "any other kind of substantial gainful work."[15]

In determining whether a claimant qualifies as disabled, the ALJ uses a five-step sequential evaluation, considering whether:

1) the claimant is engaged in substantial gainful activity;

2) she has a severe medically determinable physical or mental impairment;

3) the impairment is equivalent to an impairment precluding substantial gainful activity (listed in the appendix of the relevant disability regulation);

4) she has the residual functional capacity to perform past relevant work; and

5) she has the residual functional capacity to perform other work, considering her age, education, and work experience.[16]

---

[13] *See Ellison v. Sullivan*, 929 F.2d 534, 536 (10th Cir. 1990).

[14] 42 U.S.C. § 423(d)(1)(A).

[15] *Id.* § 423(d)(2)(A).

[16] 20 C.F.R. § 404.1520(a)(4); *Bowen v. Yuckert,* 482 U.S. 137, 140-42, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987); *Williams v. Bowen,* 844 F.2d 748, 750-51 (10th Cir. 1988).

In the first four steps, the claimant has the burden of establishing disability.[17] At step five, the Commissioner must show the claimant retains the ability to perform other work in the national economy.[18]

## PROCEDURAL HISTORY

Plaintiff applied for disability insurance benefits in July 2021, alleging a disability onset date of July 3, 2019.[19] On February 16, 2023, the ALJ issued a decision denying benefits.[20] On August 3, 2023, Plaintiff's request for Appeals Council review was granted based on the Council's determination that the claim file contained "material evidence that was not entered into the record as exhibits."[21] On remand, the ALJ held an administrative hearing and on May 21, 2024, issued a second written decision, again denying benefits.[22]

As set forth in the May 2021 decision, at step two of the sequential evaluation process, the ALJ found Plaintiff had the severe medically determinable impairments of obesity, Crohn's disease, obstructive sleep apnea, trigger finger, right carpal tunnel syndrome, plantar fascial fibromatosis, degenerative disc disease and fibromyalgia.[23] The ALJ found Plaintiff had nonsevere impairments of hyperthyroidism, hiatal hernia, osteoarthritis, migraine headaches, and

---

[17] *Ray v. Bowen,* 865 F.2d 222, 224 (10th Cir. 1989).

[18] *Id.*

[19] ECF No. 10-2, Certified Administrative Transcript ("Tr." 20).

[20] ECF No. 10-3 at 22-36 (Tr. 133-147), February 16, 2023 Social Security Administration Decision.

[21] ECF No. 10-3 at 45-48 (Tr. 156-157), August 3, 2023 Order of Appeals Council.

[22] *Id*.

[23] *Id.* at 10-2 at 21-37 (Tr. 20-36); 20 C.F.R. § 404.1520(g).

polychondritis.[24] At step three, the ALJ determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment.[25]

The ALJ then found Plaintiff had the residual functional capacity to perform "light work" with the following restrictions:

> [S]he can occasionally push and pull bilateral foot controls; occasionally climb ramps and stairs; never climb ladders, ropes, and scaffolds; frequently balance; and occasionally stoop, kneel, crouch, and crawl. She can frequently reach in all directions, handle, and finger with her right dominant upper extremity. The claimant can never be exposed to hazards such as unrestricted heights and dangerous moving machinery, and occasionally be exposed to extreme cold, extreme heat, vibration, and pulmonary irritants. She can be exposed to moderate noise as defined in the Selected Characteristics of Occupations (SCO). The claimant needs ready access to a restroom at the workplace during normal breaks. Due to physical pain and fatigue, she is limited to simple work.[26]

At step four, based on this residual functional capacity and the testimony of a Vocational Expert ("VE"), the ALJ found Plaintiff could not perform her past work as a lot attendant and a hand packager.[27] But at step five, the ALJ found Plaintiff could perform other jobs in the national economy, including cafeteria attendant, cleaner/housekeeper and marker.[28] Therefore, the ALJ found Plaintiff not disabled from July 3, 2019 (the alleged onset date) through May 21, 2024 (the date of the decision) and denied her claim.[29]

---

[24] ECF No. 10-2 at 24 (Tr. 23).

[25] *Id.* at 26-27 (Tr. 25-26); 20 C.F.R. Part 404, Subpart P, Appendix 1; 20 C.F.R. § 404.1520(d); 20 C.F.R. § 404.1525, 20 C.F.R. § 404.1526.

[26] ECF No. 10-2 at 27 (Tr. 26).

[27] *Id.* at 35 (Tr. 34).

[28] *Id.* at 36-37 (Tr. 35-36); 20 C.F.R. § 404.1569; 20 C.F.R. § 414.1569a; 20 C.F.R. § 416.969a.

[29] *Id.* at 37 (Tr. 36).

The ALJ's decision became the Commissioner's final decision when the Appeal's Council denied Plaintiff's request for review of the ALJ's May 21, 2024 decision.[30] Plaintiff filed her action for judicial review with this court on November 17, 2024.[31]

## DISCUSSION

On appeal, Plaintiff argues the ALJ's decision is not supported by substantial evidence because the ALJ failed to: (1) properly address the medical opinion evidence; (2) resolve conflicts between the VE's testimony and the Dictionary of Occupational Titles ("DOT"); and (3) evaluate the effect of all Plaintiff's impairments on her ability to work.[32] For the reasons stated below, Plaintiff fails to demonstrate any error by the ALJ.

### I.    The ALJ Did Not Err In Evaluating The Medical Evidence

Under the regulations the ALJ may "not defer or give specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources."[33] Instead, the ALJ shall

---

[30] ECF No. 10-2 at 8-10 (Tr. 7-9).

[31] ECF No. 1, Complaint.

[32] ECF No. 12; ECF No. 20.

[33] 20 C.F.R. § 416.920c(a); § 404.1520c(a). Plaintiff's Motion references 20 C.F.R. § 404.1527, implicitly suggesting the ALJ must offer a treating source's opinion special deference. The treating source rule however, only applies to claims filed before March 27, 2017. *See* ECF No. 12 at 6. Plaintiff also cites to SSR 96-5p for the premise that an ALJ must explicitly address any statements on issues reserved to the Commissioner. But this SSR was rescinded and under the revised regulations an ALJ "will not provide any analysis" about statements on issues reserved for the Commissioner because that evidence is "inherently neither valuable nor persuasive." 20 C.F.R. § 404.1520b(c)(3); *see also Staheli v. Comm'r SSA*, 84 F.4th 901, 905-906 (10th Cir. 2023) (internal citations omitted) ("Statements on issues reserved to the Commissioner, including on the ultimate issue of whether the claimant is or is not disabled or able to work, are evidence that is neither valuable nor persuasive and the ALJ is not required to provide any analysis about how [he] considered such evidence in [his] determination or decision.")

assesses the persuasiveness of the medical opinion evidence based on the following factors: (1) supportability (the objective medical evidence and supporting explanations presented by the medical source); (2) the consistency of the opinion with other medical and nonmedical sources; (3) the relationship with the claimant (including its length, frequency, purpose, and extent—and whether it was an examining relations); (4) any specialization; and (5) any other relevant factors.[34] The most important factors are supportability and consistency and the ALJ *must* explain how he evaluated those two factors.[35] "'Supportability' addresses how closely connected the relevant objective medical evidence is to the supporting explanations offered by a medical source and 'consistency' compares a medical opinion or prior administrative findings to the evidence."[36]

An ALJ need not discuss every piece of evidence, as long as the record demonstrates "that the ALJ considered all of the evidence."[37] Further, although the regulations do not specifically address the degree to which the ALJ must discuss supportability and consistency, at a minimum the ALJ is required to provide "enough detail such that the [c]ourt can follow the [ALJ's] reasoning and determine whether the correct legal standards have been applied."[38]

---

[34] 20 C.F.R. § 404.1520c(b), (c)(1)-(5).

[35] 20 C.F.R. § 404.1520c(b)(2); § 416.920c(b)(2). The ALJ is only required to discuss the remaining factors if there are "two or more medical opinions . . . about the same issue [that] are equally well-supported and consistent with the record but are not exactly the same." 20 C.F.R. § 404.1520c(b)(2)-(3); 20 C.F.R. § 416.920c(b)(2)-(3).

[36] *Ashley S. v. Kijakazi,* 2023 U.S. Dist. LEXIS 206619, at *10-11 (D. Utah Nov. 17, 2023) (citing 20 C.F.R § 416.920c(c)(1)-(2); 20 C.F.R. § 404.1520c(c)(1)-(2)).

[37] *Clifton v. Chater,* 79 F.3d 1007, 1009-10 (10th Cir. 1996).

[38] *Smallwood v. Kijakazi,* 2022 U.S. Dist. LEXIS 179808, at *8 (D.N.M. Sept. 30, 2022) (quoting *Keyes-Zachary,* 695 F.3d at 1166).

On appeal, Plaintiff contends the ALJ failed to adequately address the supportability and consistency factors with respect to the medical opinions of Dr. Kent Smith, Dr. David Shaskey, Dr. Patrick Zimmerman and Teri Clawson--PA. The ALJ's evaluation of each opinion is addressed below.

### ~Dr. Kent Smith

The ALJ found Dr. Smith's July 18, 2022 opinion, proposing a range of exertional and non-exertional limitations along with several work-preclusive restrictions, "not very persuasive."[39] Although the ALJ agreed with Dr. Smith's exertional suggestions,[40] the ALJ disagreed with Dr. Smith's opinions regarding Plaintiff's limited sit, stand and walk totals, left arm restrictions and the opinion that due to her medical conditions Plaintiff would miss twenty days of work per month.[41]

In his decision, the ALJ properly evaluated Dr. Smith's opinions in the context of the regulation's supportability and consistency factors. The ALJ addressed consistency, finding Dr. Smith's opinion that Plaintiff could occasionally lift up to 20 pounds as "consistent with" Plaintiff's muscle strength and the absence of any "persistent upper extremity symptoms."[42] In turn, the ALJ considered supportability, finding Dr. Smith's opinion that Plaintiff could only walk for one hour at a time and two hours in a workday was "not supported" by Dr. Smith's examination identifying Plaintiff as exhibiting a "normal gait.".[43]

---

[39] ECF No. 10-2 at 33 (Tr. 32; Tr. 1555-57).

[40] The ALJ ultimately found Plaintiff more limited, in terms of certain environmental exposures, than those suggested by Dr. Smith. *See* ECF No. 10-2 (Tr. 26, 32 (citing Tr. 1555-57)).

[41] *Id.*

[42] *Id.* (Tr. 32 (citing Exhibit 30F; Exhibit 31F)).

[43] *Id.* (citing Exhibit 6F; Exhibit 16F); *Nielsen,* 2022 U.S. App. LEXIS 30034, at *6-7 (10th Cir. 2022) (unpublished) (internal inconsistency within an opinion in evaluating the supportability factor).

**~Dr. David Shaskey**

Next, Plaintiff asserts the ALJ failed to consider Dr. David Shaskey's opinions that Plaintiff could only sit, stand or walk for one hour at a time, never manipulate objects or raise her arms, never bend, squat, crawl or climb and would be absent from work 20 days a month.[44] Yet similar to Dr. Smith, the ALJ adequately supported his reasons for finding Dr. Shaskey "not persuasive" and for concluding that the doctor's opinions were unsupported and inconsistent with other opinions.[45] Specifically, the ALJ determined Dr. Shaskey's treatment notes---showing Plaintiff to exhibit full muscle strength, normal balance, no acute distress and normal psychiatric and neurological functioning---did not align with the doctor's disabling limitations and "extreme opinions."[46] Further, the ALJ found Dr. Shaskey's opinions to be inconsistent with the objective evidence set forth throughout the record.[47]

**~Dr. Patrick Zimmerman**

Plaintiff argues the ALJ "nit-picked" Dr. Patrick Zimmerman's opinion and improperly took issue with his conclusion that Plaintiff was permanently impaired and unable to sustain an eight hour work day.[48] Yet upon review, the ALJ clearly articulated the reasons for finding Dr. Zimmerman's opinion "not persuasive."[49] Among other things, the ALJ found Dr. Zimmerman's

---

[44] Tr. 3034-3036; Exhibit 55F.

[45] ECF No. 10-2 (Tr. 33).

[46] *Id.* (Tr.32-33 (citing Tr. 2330, Tr. 2335, Tr. 2340-41)); *see* 20 C.F.R. § 404.1520c(c)(1).

[47] *Id.* (Tr. 32-33 (citing Exhibit 45F)); *id.* (Tr. 26-34 (analysis of objective medical record and Plaintiff's longitudinal treatment course)); 20 C.F.R. §1520c(c)(1); *see Wall v. Astrue,* 561 F.3d 1048, 1069 (10th Cir. 2009) (ALJ's decision should be read "as a whole" such that evidence in one portion of decision can provide support for other portions of the decision).

[48] ECF No. 12 at 8-9.

[49] ECF No. 10-2; Tr. 32.

conclusions inconsistent with his own records. For example, Dr. Zimmerman's severe restrictions failed to align with his treatment notes characterizing Plaintiff as "doing very well,"[50] and the suggestion that Plaintiff could not bend, twist, squat, crawl, climb or manipulate was unsupported by the doctor's vague reference to testing without any further detail or explanation of such testing.[51] Thus, despite Plaintiff's claim, the ALJ effectively addressed the supportability and consistency of Dr. Zimmerman's opinions and the ALJ did not "neglect[ ] his duty to properly evaluate" the doctor's opinions.[52]

### ~Teri Clawson-P.A.

Finally, Plaintiff challenges the ALJ's consideration of PA-Clawson's opinions. PA-Clawson submitted two checkbox questionnaires related to Plaintiff; the first in July 2022 and the second in March 2024.[53] In his decision, the ALJ found the 2022 form to be "almost identical" to Dr. Smith's opinion (offered three days earlier) and therefore decided it was "likewise unpersuasive."[54] As to the March 2024 form, PA-Clawson assessed significant restrictions to Plaintiff, including an inability to carry any weight, total restrictions from environmental exposures, no ability to manipulate objects and the need to lay down for several hours each day.[55] But upon review, the ALJ found PA-Clawson's restrictions unsupported and inconsistent with the objective evidence of record. By way of example, the ALJ noted the

---

[50] *Id.* (Tr. 32 (citing Tr. 2392, Tr. 2393, Tr. 2403, Tr. 2408)).

[51] *Id.* ("Citing various studies without further explanation does not establish related limitations.").

[52] ECF No. 12 at 9.

[53] *Id.* (Tr. 1558-60; Tr. 3038-40).

[54] *Id.* (Tr. 32 (citing Exhibit 24F; Exhibit 23F) ("Similarly, the opinion of Terri Clawson, PA, completed three days later [after Dr. Smith's July 19, 2022 opinion] is likewise unpersuasive because her findings in the checkbox portion of her opinion are almost identical to Dr. Smith's opinion.")).

[55] *Id.* (Tr. 33; Tr. 3038-40).

conclusion that Plaintiff was unable to work did not coincide with PA-Clawson's contemporaneous treatment notes showing Plaintiff had no significant abnormalities.[56] Additionally, many of Plaintiff's appointments were held remotely and when Plaintiff was seen in person, PA-Clawson did not conduct detailed examinations or make observations that supported a total inability to sit, stand, walk or use her upper extremities.[57]

In assessing the evidence related to Plaintiff's physical impairments, the ALJ considered the medical opinions, medical records and prior administrative medical findings.[58] Although the ALJ reached a determination that did not precisely mirror any of the prior administrative medical findings or medical opinions, the ALJ gave valid reasons for his findings, applied the correct legal standards and identified the supporting evidence he relied upon. As a result, the ALJ did not err in evaluating the medical evidence provided by Drs. Smith, Shaskey and Zimmerman and PA-Clawson .[59]

## II.    The ALJ Appropriately Resolved Any Possible Conflicts Between The VE's Testimony And The DOT

Plaintiff asserts there is a conflict between Plaintiff's RFC limitation to "simple work" and the VE's testimony identifying occupations that Plaintiff can perform which have a level 2 reasoning.

At Plaintiff's administrative hearing, the ALJ posed hypothetical questions to the VE about an individual with Plaintiff's age, education, work experience and residual functional capacity.[60]  The VE testified that such an individual could perform unskilled work as a cafeteria

---

[56] *Id.* (Tr. 33 (citing Tr. 1129-32; Tr. 1432-26; Tr. 1602-09; Tr. 3092-3106)).

[57] *Id.* (Tr. 33 (citing Exhibit 8F; Exhibit 20F; Exhibit 28F; Exhibit 59F)).

[58] *Id.* (Tr. 41-45).

[59] 20 C.F.R. § 404.1520c.

[60] ECF No. 10-3 (Tr. 72-75), Transcript March 26, 2004 Hearing.

attendant, cleaner/housekeeper and marker.[61] For each representative occupation, the VE

identified the number of jobs available in the national economy. and the Specific Vocational

Preparation (SVP) level listed in the DOT. When questioned by the ALJ about the consistency of

her testimony with that of the DOT, the VE stated:

> Your Honor, my testimony has been consistent with the DOT and companion
> publications. However, those publications do not specifically address climbing in
> the work environment so that I rely on my education, training and professional
> experiences as a vocational rehabilitation counselor. Also, those publications do
> not specifically address pursing and pulling bilaterally with the lower extremities,
> ready access to a bathroom, being off task or being absent from the workplace.
> For those responses I do rely on my education, training and professional
> experiences as a vocational rehabilitation counselor. Also in regards [sic] to the
> transferable skills analysis I do rely on my education, training and professional
> experiences as a vocational rehabilitation counselor of 20 plus years."[62]

After this testimony, the ALJ asked if Plaintiff's counsel had additional questions and  counsel

responded by requesting more information from the VE about sedentary occupations.[63]

On appeal, Plaintiff challenges the ALJ's reliance on the VE's testimony and argues the

ALJ should have resolved conflicts between a limitation to "simple work" and DOT information

regarding Generalized Education Development ("GED") reasoning level 2 jobs. For the reasons

stated, Plaintiff's argument fails.

For the difference between the VE's testimony and the DOT to be characterized as "at

odds," the conflict must be "obvious or apparent."[64] Such is not the case here. Rather, the VE

testified at the administrative hearing that the evidence provided was either consistent with or

---

[61] *Id.* (Tr. 73). Cafeteria attendant (DOT #311.677-010), Cleaner/housekeeper (DOT #323.687-014),
Marker (DOT #209.587-034).

[62] *Id.* (Tr. 75).

[63] *Id.* (Tr. 78-79).

[64] *Gutierrez v Colvin,* 844 F.3d 804, 808 (9th Cir. 2016).

simply not addressed by the DOT.[65] Thus, it was appropriate for the ALJ to reasonably rely upon the VE's testimony without further inquiry and Plaintiff's counsel did not raise any objection to the ALJ's reliance.[66] Going a step further, it was also appropriate for the ALJ to rely upon the VE's testimony because any perceived conflict between reasoning level 2 jobs and an RFC limitation to "simple work" does not exist.[67] Finally, even removing the reasoning level 2 occupation of marker from the analysis, the unskilled occupations of cafeteria attendant and cleaner/housekeeper amount to a significant number of jobs in the national economy which Plaintiff can perform.[68] Accordingly, there is no obvious and apparent conflict between the VE's testimony and the DOT and there is no conflict with respect to the identified jobs and a GED reasoning level 2.[69]

---

[65] ECF No. 10-3 (Tr. 75).

[66] *Glass v. Shalala,* 43 F.3d 1392, 1396-97 (10th Cir. 1994).

[67] *Hackett v. Barnhart,* 395 F.3d 1168, 1176 (10th Cir. 2005) (finding level 2 reasoning more consistent with limitation to "simple and routine work tasks"); *Stokes v. Astrue,* 274 F.3 App'x 675, 684 (10th Cir. 2008) (rejecting notion that "the ALJ's limitation to simple, repetitive, and routine work should be construed as a limitation to jobs with a reasoning-level rating of one") (citing *Hackett,* 395 F.3d at 1176); *Elizabeth L.F. v. Kijakazi,* 2023 U.S. Dist. LEXIS 103105, at *6 (D. Utah June 13, 2023) (finding limitation to simple unskilled work consistent with GED reasoning level 2); *Troy T. v. Kijakazi,* 2022 U.S. Dist. LEXIS 77430, at *13 ("[a] limitation to simple tasks, . . . , is consistent with level-two reasoning.").

[68] Together the representative occupations of cleaner, with 175,470 positions and cafeteria attendant, with 26,100 positions, (total 201, 570) amount to a significant number of jobs available in the national economy. *See Garcia v. Comm'r SSA,* 817 F. App'x 640, 649 (10th Cir. 2020) (upholding ALJ's step five finding based on 20,500 to 22,00 jobs nationally).

[69] Plaintiff suggests there is an unresolved conflict between the VE testimony and information noted in the Occupational Information Network ("O*Net"). O*Net however "was not developed to replace the DOT with respect to SSA determinations." *Terry T. v. Saul,* 2021 U.S. Dist. LEXIS 49123, at *11 ftn. 2 (N.D. Okla. March 16, 2021).

III.    **The ALJ Considered The Totality Of Evidence To Determine Plaintiff's
Impairments Resulted In Work-Related Limitations**

In crafting an RFC tailored to accommodate Plaintiff's physical impairments, the ALJ

conducted a detailed comparison of Plaintiff's claims of pain, fatigue, bowel incontinence,

gastrointestinal symptoms, manipulative and reaching issues and mobility constraints, with the

objective evidence, prior administrative findings and other relevant evidence of record. In doing

so, the ALJ concluded that Plaintiff's "statements, concerning the intensity, persistence, and

limiting effects" of her symptoms were "not entirely consistent" with the other evidence.[70]

Despite Plaintiff's claims, a review of the evidence and the ALJ's evaluation shows the ALJ

properly considered the functional limitations caused by Plaintiff's obesity and evaluated the

effect of all Plaintiff's impairments on her overall ability to work.

First, the ALJ determined the Plaintiff's complaints of incapacitating gastrointestinal

symptoms were not completely supported by the record. The ALJ provided a thorough

evaluation of Plaintiff's management of her Crohn's disease and associated gastrointestinal

complaints and highlighted the fact that, outside of surgeries in July 2019 and in April 2020,

Plaintiff was able to successfully manage her symptoms with medication.[71] The ALJ noted

Plaintiff's colonoscopies did not show any active Crohn's disease and that Plaintiff's medical

---

[70] ECF No. 10-2 (Tr. 27); 20 C.F.R. § 404.1529(c)(4); Social Security Ruling 16-3p.

[71] The ALJ's evaluation included a discussion of over 15 exhibits and 134 pages of evidence. *See* ECF
No. 10-2 (Tr. 28-29 (citing Tr. 514-21, Tr. 254, Tr. 529, Tr. 538-39, Tr. 542-43, Tr. 589, Tr. 646, Tr. 669,
Tr. 672, Tr. 676, Tr. 696, Tr. 704-07, Tr. 715, Tr. 718, Tr. 747, Tr. 770, Tr. 859, Tr. 870-71, Tr. 876, Tr.
877, Tr. 882, Tr. 887, Tr. 892, Tr. 1198, Tr. 1206, Tr. 1262, Tr. 1433, Tr. 1702-03, Tr. 2001-02, Tr. 2027,
Tr. 2093-2114, Tr. 2124-25, Tr. 2133, Tr. 2166-70, Tr. 2181-86, Tr. 2190, Tr. 2195, Tr. 2198-203, Tr.
2224, Tr. 2236, Tr. 2237, Tr. 2329, Tr. 2334, Tr. 2335, Tr. 2340, Tr. 2341, Tr. 2347, Tr. 2348, Tr. 2415,
Tr. 2404-23, Tr. 2531, Tr. 2772, Tr. 3053-57, Tr. 3065-74, Tr. 3083, Tr. 3084, Tr. 3086, Tr. 3087, Tr.
3177 and Tr. 3178)).

providers characterized her Crohn's as "mostly in remission."[72] The ALJ also pointed out that although Plaintiff testified to the severity of her bowel incontinence, she denied bowel incontinence to her medical providers.[73]

Regarding Plaintiff's right arm issues, including carpal tunnel syndrome and trigger finger, the ALJ acknowledged that Plaintiff had undergone several release procedures[74] but found Plaintiff exhibited positive post-operative improvement and showed full range of motion.[75] In addition to her arm issues, the ALJ provided an in-depth discussion of Plaintiff's foot and ankle conditions. Yet similar to her arm issues, the ALJ noted that after foot surgery Plaintiff admitted to improvement, resolution of her pain and the ability to resume normal activities.[76]

Next, the ALJ considered Plaintiff's back and neck symptoms, fibromyalgia and sleep apnea. While imaging of Plaintiff's back and neck showed some degeneration, due to the absence of radiating pain or muscle weakness no surgery was recommended. Additionally, Plaintiff's fibromyalgia improved with medication and consistent use of Plaintiff's Continuous

---

[72] *Id.*; 20 C.F.R. § 404.1529(c)(4) (ALJ considers conflicts between claimant's statements and the record).

[73] *See e.g.* Tr. 69, Tr. 406, Tr. 584, Tr. 789, Tr. 806, Tr. 812, Tr. 814, Tr. 822, Tr. 827, Tr. 837, Tr. 842, Tr. 858, Tr. 870, Tr. 876, Tr. 881, Tr. 886, Tr. 891, Tr. 896, Tr. 901, Tr. 907, Tr. 910, Tr. 913, Tr. 916, Tr. 926, Tr. 929, Tr. 1199 and Tr. 1205. *David v. Comm'r of Soc. Sec.,* 2024 U.S. Dist. LEXIS 117894, at *9 (W.D. Wash. July 3, 2024) (ALJ properly considered inconsistencies between objective medical evidence, statements to providers and the degree of limitation alleged).

[74] ECF No. 10-2 at 30-31 (Tr. 29-30).

[75] *Id.* (Tr. 29 citing 1392-95, 1397)). Nonetheless, the ALJ provided for manipulative and reaching restrictions for Plaintiff in the RFC.

[76] *Id.* (Tr. 30-3, citing 639, Tr. 641-42, Tr. 1631, Tr. 1632, Tr. 1639, Tr. 1641, Tr. 1622, Tr. 1645, Tr. 1663-68, Tr. 1647-48, Tr. 1652, Tr. 1958, Tr. 1960-61, Tr. 1967, Tr. 1969, Tr. 1974-75 and Tr. 1978)).

Positive Airway Pressure ("CPAP") machine resulted in improvement of her obstructive sleep apnea symptoms.

Despite Plaintiff's claim to the contrary, the ALJ did evaluate Plaintiff's weight and placed her within the obese range.[77]  Plaintiff argues an RFC of "light work" does not accommodate her obesity, but she fails to point to any evidence supporting her claim that greater restrictions were required. Indeed, it was to Plaintiff's own benefit that the ALJ determined Plaintiff's obesity to be severe, based simply on her Body Mass Index ("BMI"), and incorporated it in the RFC, since Plaintiff did not receive treatment and was not diagnosed with obesity by any medical providers.[78]

Overall, the ALJ did not overlook any of Plaintiff's limitations and took account of all Plaintiff's impairments in formulating the RFC. The ALJ properly considered the totality of the record and provided a detailed analysis of Plaintiff's symptoms, her providers' medical opinions and the prior administrative medical findings as support for his decision.[79]

## V.  RECOMMENDATION

For these reasons, the Court finds the Commissioner's Decision to be legally sound and supported by substantial evidence. Accordingly, the Court RECOMMENDS to the District Court that the Commissioner's decision be AFFIRMED and that Plaintiff's Motion for Review of Administrative Action be DENIED.[80]

---

[77] *Id.* (Tr. 30, citing Tr. 2566, Tr. 3055).

[78] *Id.* at 35 (Tr. 34) ("The claimant's obesity, combined with degenerative disc disease, contributes to her residual functional capacity to perform a limited range of lick work including occasionally climbing ramps and stairs, as the additional weight places additional strain on the claimant's weight-bearing joints, causing increase difficulty performing such activities.").

[79] 20 C.F.R. § 404.1520c.

[80] ECF No. 12.

The Clerk's Office is directed to mail a copy of this Report and Recommendation to Plaintiff who is hereby notified of his right to object. Within fourteen (14) days of receiving a copy, Plaintiff may file his written objections.[81] A failure to do so may constitute waiver of objections upon subsequent review.

Dated this 29th day of April, 2025.

DUSTIN B. PEAD
Chief United States Magistrate Judge

---

[81] *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).